# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| SHARON D. KING, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:07-CV-01202-RDP |
| } | |
| MICHAEL J. AS TRUE, } | |
| Commissioner of Social Security, } | |
| } | |
| Defendant. } | |

## MEMORANDUM OF DECISION

Plaintiff Sharon D. King brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.      Procedural History**

Plaintiff filed her application for a period of SSI benefits on September 22, 2004, alleging a disability onset date of January 5, 2004. (Tr. 13, 44, 51, 53, 181). Plaintiff's application was denied and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 26-28, 34). Plaintiff's case was heard by ALJ Robert G. Faircloth on July 12, 2006. (Tr. 179A-198). In his October 30, 2006 decision, ALJ Faircloth determined that Plaintiff was not eligible for SSI benefits because she failed to meet the disability requirements of the Social Security Act (the "Act") and retained the residual functional capacity to perform her past relevant work as a clerical worker. (Tr.

13, 20). On April 27, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 3-5). The ALJ's decision then became the final decision of the Commissioner, and therefore a proper subject of this court's review.

Plaintiff was born on July 12, 1952 and has one year of college education. (Tr. 44, 61, 183). She previously worked as a general office clerk. (Tr. 15, 183-84). Plaintiff alleges that she has been unable to engage in substantial gainful activity since January 5, 2004 due to hypertension and insulin dependent diabetes. (Tr. 15, 18).

Plaintiff was diagnosed with diabetes in 1997 after being hospitalized for pancreatitis. (Tr. 94). She saw Dr. Bell at the Kirkland Internal Medicine Clinic from 2002 to 2004 for general health maintenance as well as for diabetes, hypertension, acute low back pain, fatigue, weakness, dyspepsia, and hyperlipidemia. (Tr. 15, 92-107). In January 2002, Dr. Bell characterized Plaintiff's diabetes mellitus and hypertension both as poorly controlled. (Tr. 107). In April 2002, Plaintiff complained of "a one-week history of low back pain which increases with prolonged sitting and certain position changes." (Tr. 106). Dr. Bell diagnosed acute low back pain and prescribed Bextra, Skelaxin, and application of heat to the pained area. (*Id.*) On September 26, 2002, Plaintiff saw Dr. Bell after having been in a car accident two weeks earlier. (Tr. 104). Dr. Bell reports again that Plaintiff's diabetes was poorly controlled, although Plaintiff thought it was well controlled. (*Id.*). Plaintiff's medications were listed as including Nexium, Verapamil, Clonidine, Lisinopril, Humulin, Actos, HCTZ, Prevachol and Naproxen. (*Id.*) Dr. Bell's assessment included hypertension, Type II diabetes mellitus, dyspepsia, hyperlipidemia, and left shoulder pain following a motor vehicle accident. (*Id.*) Dr. Bell listed "exercise daily" as part of Plaintiff's recovery plan. (Tr. 105).

On a follow-up visit to Dr. Bell in July 2003, Plaintiff reported that her blood sugars had improved. (Tr. 102). During another follow-up visit in September 2003, Plaintiff reported feeling "relatively well," though her hypertension and diabetes were again characterized as poorly controlled. (Tr. 100). In January 2004, Dr. Bell reported that Plaintiff's blood sugars fasting had been between 120 and 170, and she discussed with Plaintiff the goal of having blood sugar levels between 100 and 110. (Tr. 99). Plaintiff also reported having some dependent peripheral edema for which compression stockings were prescribed. (*Id.*) On June 25, 2004, Plaintiff returned to the Kirklin Clinic for clinical care. (Tr. 97-98). At that time, Plaintiff saw Dr. Patrick Davis, who reported that Plaintiff's blood pressure was poorly controlled and increased her Sular dosage. (Tr. 97). A cardiovascular exam revealed a regular rate and rhythm with no murmur or gallops, and Plaintiff reported having blood sugar levels in the 120's. (*Id.*) Plaintiff's medications included Enalapril, Sular, HCTZ, Clonidine, Humulin, Glucophage, Actos and Pravachol. (*Id.*)

Plaintiff saw Dr. L. Steven Hunt at the Kirklin Clinic for a comprehensive evaluation on August 2, 2004. (Tr. 94-96). Plaintiff reported checking her blood sugar each day with values ranging from 128 to 158 and she also reported having mild episodes of hypoglycemia about once a month that improved with orange juice. (Tr. 94). Plaintiff's blood pressure was recorded as 148/102 and Dr. Hunt noted a concern about Plaintiff having a significantly elevated blood pressure despite multiple antihypertensive medications. (Tr. 96). Dr. Hunt scheduled a CT scan of the adrenals and a renal ultrasound. (*Id.*) He noted that she was overweight with a BMI of 28.2 and he encouraged her to exercise regularly. (*Id.*) An August 4, 2004 renal ultrasound showed no sign of artery stenosis and a CT was negative for adrenal adenoma. (Tr. 93). On November 8, 2004, Plaintiff reported that her blood pressure had been "pretty good" with typical readings around 122-130 over 70-89. (Tr.

92). Dr. Hunt's overall impression was that he was encouraged by Plaintiff's weight loss, and gave her a flu shot for general health maintenance. (*Id.*)

Medical records from the Chris McNair Clinic at the Jefferson County Department of Health covering the period July 7, 2005 to July 22, 2005, indicate that Plaintiff received treatment for gynecological problems. (Tr. 16, 131-51). Her blood pressure was recorded as 100/70 on July 7, 2005. (Tr. 135). On this date, the doctor's notes indicate that Plaintiff's benign essential hypertension was under good control, but she was also assessed as having anemia. (Tr. 136-37).

On June 19, 2006, Plaintiff presented to the UAB Highlands Hospital Emergency Room complaining of a severe headache. (Tr. 164). She reported that she ran out of her blood pressure medication. Plaintiff was treated and given a prescription for Clonidine. (Tr. 165). The diagnosis was hypertension rebound. (Tr. 17, 165).

On July 5, 2006, Dr. J. L. Zaremba consultatively examined Plaintiff at the request of her attorney. (Tr. 153-60). Plaintiff's chief complaints were constant fatigue, increasing edema, diabetes with episodic hypoglycemic reactions, chronic headaches, and low back pain. (Tr. 153). Plaintiff's medications were listed as including Lorazepam, Hydrochlorthiazide, Metformin, Enalapril, Clonidine, and Humulin. (*Id.*)

Dr. Zaremba's exam of Plaintiff revealed the following: a normal blood pressure reading of 130/84; a regular heart rate and rhythm with a 1/6 systolic murmur; her back had "some spasm to percussion;" she had a slow but steady gait; was unable to squat more than 1/3 of the way; and had full range of motion in her extremities. (Tr. 154). Plaintiff had visual blurring associated with fluctuations in blood sugar and/or headaches and some shortness of breath. (*Id.*) She also had paresthesias of the hands and feet, lower back pain that was aggravated by standing and walking, and

some radicular pain. (*Id.*) Dr. Zaremba's diagnoses were diabetes mellitus, type 2, treated with insulin, without end organ damage; hypertension, "severe, with some moderate difficulty to control;" migraine headaches; mechanical chronic lower back fatigue/weakness; asthma; anxiety disorder; chronic fatigue; hyperlipidemia; and increasing edema. (Tr. 155).

Dr. Zaremba completed a Physical Capacities Evaluation form in which he indicated that Plaintiff could occasionally lift up to ten pounds, push/pull with her arms and legs, climb stairs, grasp and handle objects, bend, stoop, and reach. (Tr. 156). He opined that she could sit and stand/walk for a total of three hours each in an eight hour workday. (*Id.*) He completed questionnaires in which he opined that Plaintiff's pain and fatigue/weakness were present to such an extent as to be distracting to adequate performance of daily activities/work. (Tr. 157, 159). He indicated that physical activity would cause increased pain and fatigue, and weakness to such a degree as to cause distraction from task or total abandonment of task. (Tr. 157, 159). He opined that Plaintiff had an underlying medical condition that was consistent with both the pain and fatigue she experienced. (Tr. 158, 160).

At the hearing, Plaintiff testified that she cannot sit or stand for long periods of time and that she cannot walk long distances due to shortness of breath. (Tr. 185). Plaintiff said she experiences numbness in the back of her left leg and fingers. She said that she has anemia and was taking iron pills. (Tr. 186). She also stated that her blood pressure goes up and down; that she has blurred vision due to diabetes; and that her blood sugar is usually 160 through 190. (Tr. 186-88). Plaintiff testified that she tries to perform household chores and she cooks for her children, but that she has to lie down one hour, three times a day due to back pain. (Tr. 189). She does not want to take

narcotic based medication because she has three teenagers. (*Id.*) She also alleges that the pain in her leg makes her unable or reluctant to drive long distances. (Tr. 190).

**II.     ALJ Decision**

Determination of disability under the Social Security Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past

employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ determined that Plaintiff has a severe combination of impairments of insulin dependent diabetes and hypertension. (Tr. 15). However, the ALJ found that Plaintiff's impairments, considered alone or in combination, fail to meet or medically equal the criteria of an impairment listed at 20 C.F.R., Part 404, Subpart P, Appendix 1 of the Guidelines. (Tr. 17). According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible because they are not supported by medical evidence established in the record. (Tr. 18). The ALJ determined that Plaintiff retains the residual functional capacity to perform sedentary to light work with limitations. (*Id.*) Specifically, the ALJ found that Plaintiff retained the residual functional capacity to perform her past relevant work as a clerical worker. (Tr. 20).

The ALJ called a vocational expert to testify who was present throughout the hearing and familiar with Plaintiff's background. (Tr. 192-96). The vocational expert testified that, considering Plaintiff's age, education, vocational factors and residual functional capacity, Plaintiff was capable of performing her past work as a clerical worker. (Tr. 193). Based on the vocational expert's testimony, the ALJ found that Plaintiff is capable of performing her past relevant work and that Plaintiff was not under a disability at any time through the date of the decision. (Tr. 20).

**III.    Plaintiff's Arguments for Remand or Reversal**

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the expiration of the period for Plaintiff to file objections, reversed, or in the alternative, remanded for further consideration. (Doc. # 9, at 8). Plaintiff asserts that the ALJ's

7

decision is not supported by substantial evidence and that improper legal standards were applied. Specifically, Plaintiff argues that the ALJ placed improper weight on Plaintiff's daily activities and that he did not properly consider her impairments in combination.

## IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

Plaintiff first argues that the ALJ improperly considered her testimony regarding her daily activities in finding that she was not disabled. Plaintiff asserts that routine daily activities such as housework, cooking and grocery shopping should not disqualify her from disability benefits and are not dispositive evidence of her ability to work. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (holding that claimant's admission that he performs activities such as housework and fishing did not disqualify him from disability and was not inconsistent with claimant's limitations); *Venette v. Apfel*, 14 F.Supp.2d 1307, 1314 (S.D. Fla. 1998) (citing *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987) (holding that housework and light cooking are minimal daily activities and therefore are not dispositive evidence of an ability to perform sedentary work)). However, the ALJ here did not automatically disqualify Plaintiff based on her daily activities or use her activities as dispositive evidence in the case. Rather, he pointed out Plaintiff's activities as one of several factors in rejecting her testimony on credibility grounds. The court agrees with the ALJ that the medical records and other evidence do not support Plaintiff's subjective complaints but rather provide substantial evidence for the ALJ's findings.

The ALJ properly invoked the Eleventh Circuit pain standard at the beginning of his evaluation of Plaintiff's subjective symptoms. (Tr. 18). The standard for subjective complaints of pain or other symptoms requires the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also* 20 C.F.R. § 416.929.[1]  Although such evidence is itself sufficient for a finding of disability, the ALJ may elect not to credit a claimant's subjective complaints.  *See Holt*, 921 F.2d at 1223.  If the ALJ discredits a claimant's subjective description of their condition, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  Such a finding does not require the use of thaumaturgic phrases; all that is required is a clearly supported credibility determination.  *See id.*  However, the ALJ must explicitly discredit the testimony and must articulate sufficient reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *see also* Social Security Ruling 96-7p ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for the weight . . . .").

       The ALJ found that the evidence fulfilled the first part of the pain standard test but that it did not meet either prong of the second part.  (Tr. 18).  The ALJ clearly articulated his reasons for

---

[1] The Regulations provide that, when the medical evidence shows a medically determinable impairment that could reasonably be expected to produce a claimant's symptoms, evidence other than objective medical evidence will also be considered in evaluating a claimant's subjective symptoms.  Relevant factors to be considered include:  (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment other than medication; and (6) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 416.929(c)(3).

concluding that the objective medical evidence as a whole does not support the alleged severity of Plaintiff's symptoms. (*Id.*) With regard to Plaintiff's hypertension, the ALJ pointed out that the medical records repeatedly indicate that Plaintiff's hypertension was poorly controlled and that she was counseled about how to more effectively manage it. (*Id.*) He noted that on multiple occasions the medical records indicated Plaintiff's blood pressure and hypertension to be within normal limits. (*Id.*) The ALJ concluded that "when the claimant adheres to proper diet and takes her medication, her hypertension is adequately controlled." (*Id.*) This is supported by the medical records. (Tr. 92, 102-103). Plaintiff had never gone to the hospital for elevated blood pressure and there is no evidence that her blood pressure has resulted in any significant work-related functional limitations. (Tr. 18).

Next, with regards to Plaintiff's diabetes, the ALJ noted that it was poorly controlled and Plaintiff had been counseled regarding ongoing management. (Tr. 19). Plaintiff reported only mild episodes of hypoglycemia which improved with orange juice and reported no disabling reactions. (*Id.*)

As for Plaintiff's hypertension, the ALJ properly found that Plaintiff's diabetes is adequately controlled when Plaintiff adheres to a proper diet and takes her medication, and that the medical records do not corroborate the alleged side effects of her medication. (*Id.*) Lastly, the ALJ properly considered Plaintiff's allegations of inability to work due to leg pain. He noted that Plaintiff's condition had never warranted invasive or aggressive treatment. (Tr. 19). He also pointed out that despite complaints of pain and swelling in her legs, the claimant has not sought or received medical treatment for her leg pain on a regular basis. (*Id.*) Similarly, he emphasized Dr. Bell's positive exam

in April 2002 and how, while Dr. Bell reported that Plaintiff experienced some fatigue and weakness following a car accident, her condition significantly improved. (*Id.*)

Only after the ALJ evaluated Plaintiff's medical records with regard to her hypertension, diabetes and leg pain did he comment on Plaintiff's daily activities. The ALJ pointed out Plaintiff's own admissions of her ability to do work, referring to her statement that she had "no problems" concentrating on or completing tasks and that she had no problems with cooking and other household activities. (Tr. 19, 189). The ALJ properly considered all of Plaintiff's medical records in evaluating her symptoms and her functional limitations as required by 20 C.F.R. § 416.929(c). Therefore, the ALJ gave proper weight to her ability to perform light household activities.

Plaintiff next argues that the ALJ did not properly consider her impairments in combination. Social Security regulations require the ALJ to consider the combined effects of all impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled.

20 C.F.R. § 404.1523; *see Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990). When a combination of impairments exist, a claimant may be found disabled even though none of the individual impairments by itself would be disabling. *See Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir. 1986). Reviewing courts can determine that a claimant's impairments were considered in

combination from statements made by the ALJ. *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding that it was clear that impairments were considered in combination when ALJ stated that "based upon a thorough consideration of all evidence, the ALJ concludes that appellant is not suffering from any impairment, *or a combination of impairments* of sufficient severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months.") (internal quotations omitted).

The ALJ's opinion clearly and comprehensively summarizes the evidence regarding Plaintiff's medical impairments. (Tr. 15-19). The ALJ properly considered both Plaintiff's exertional and non-exertional impairments and found that Plaintiff's subjective complaints of headaches, fatigue, and pain were not credible. (Tr. 17-20). The ALJ found that Plaintiff's "impairments" were severe and specifically stated that he considered Plaintiff's impairments in combination. (Tr. 15, 17). Thus, the court finds that the ALJ properly considered Plaintiff's impairments in combination when he determined that Plaintiff's impairments did not meet or equal one of the impairments in Appendix 1, Subpart P, Regulation No. 4, and when he determined that Plaintiff retained the residual functional capacity to perform her past relevant work. (Tr. 17, 20).

**VII.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___4th___ day of September, 2008.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE